THE WATERS-PIERCE OIL COMPANY ET AL. V. G. R. COOK.

No. 471.

**1. Assignments and Propositions Thereunder.**—The first assignment of error being that the court erred in refusing to transfer the case to Cherokee County, as prayed for by the defendants in their motion for a change of venue, or to some other county out of this judicial district, because the judge of this district is disqualified to try the case, he having been a member of the city council of Palestine when the same questions involved in this case, and between the same parties, were passed upon and decided against these defendants by said council; and the first proposition being, " upon change of venue the case should be removed to some adjoining county the court house of which is nearest to the court house of the county in which suit is pending," the proposition was not considered, because not germane to the assignment.

**2. Disqualification of Judge.**—The district judge was not disqualified to try the case by reason of the facts stated in the first assignment of error. The qualifications of a judge are not to be tested by the rules which determine the qualifications of a juror. It is presumed that he can and will divest himself of all previous conceptions he may have formed as to the law or the facts, and base his judgment upon the case as developed upon the trial.

**3. Evidence Admitted, but Withdrawn from the Jury.**—The declarations of one of the defendants, that there was danger of explosion and fire from the company's plant, having been withdrawn from the jury by the plaintiff, and they having been admonished by the court that these declarations were not to be considered, and that they were not in evidence, their admission was not cause for reversal.

**4. Charge must be Warranted by Pleading and Proof.**—Until the defendant, by appropriate pleadings and proof, had averred and proven that there was no danger to plaintiff and his household from noxious gases and vapors from oils kept in his warehouse and tanks, and that gasoline kept in five gallon cans was harmless, and that neither injury nor inconvenience would result to plaintiff and his family from storing and selling oils in such quantities by defendant, he was not entitled to a charge submitting as a special issue the questions, do the drippings and leakage of the gasoline oil kept by the defendant on its premises in drums and five gallon sealed cans cause noxious vapors and gases to pervade plaintiff's residence, to the essential inconvenience and discomfort of himself and family; when the court had in his charge submitted the issue whether vapors and gases which arose from the plant of defendant company extended to and pervaded the air of plaintiff's residence.

**5. Assignment of Error—Assumption of Facts.**—When the assignment assumes that issues were submitted by the court not warranted by the

pleading and the evidence, and this assumption is not borne out by the record, the assignment is not considered.

**6. Proper Issues and Charge.**—See this case for proper issues and charge in a case wherein an injunction was asked to restrain and enjoin defendants from storing kerosene and gasoline and other inflammable oils near the residence of the plaintiff, whereby his family and residence was in danger of destruction by fire and gas explosion, and the drippings and leakage engendered noxious vapors, which pervaded his residence, to the inconvenience and discomfort of himself and family.

APPEAL from Houston. Tried below before Hon. W. Q. REEVES.

*G. H. Gould*, for appellants.—1. Upon a change of venue the case should be removed to some adjoining county, the court house of which is nearest the court house of the county in which the suit is pending. Loonie v. Tillman, 3 Texas Civ. App., 332; Rev. Stats., art. 1090; Slaven v. Wheeler, 58 Texas, 25; The State v. Burks, 82 Texas, 585.

2. The court erred in permitting, over defendant's objection, Cook, Jones, and Fales to testify that Mr. Naismith had told them that there was danger of explosions and fire from defendant's plant. The impressions made on the minds of a jury by the admission of improper testimony, which is calculated to injure the opposite party, are not removed by an instruction not to regard it. Railway v. Levy, 59 Texas, 551, 552.

3. A charge should submit to the jury only such issues as are made by the pleading and evidence, and should submit no issue not so made. Loving v. Dixon, 56 Texas, 79; Blanton v. Mays, 58 Texas, 428; Railway v. Gilmore, 62 Texas, 392.

4. There is no evidence to authorize this injunction on account of danger from fire, as defendants' plant is now constructed. And none to support the judgment restraining defendants from keeping kerosene oil in its tanks and gasoline oil in sealed five-gallon cans. Railway v. Somers, 78 Texas, 439; Railway v. Schmidt, 61 Texas, 282; Railway v. Bracken, 59 Texas, 76.

*McMeans & Gill*, for appellee.—1. Appellee objects to the consideration of the first proposition under the first error assigned, because the proposition is not germane to the assignment. Rules 29, 30, for Cts. of Civ. App.; Shumard v. Johnson, 66 Texas, 70.

2. A district judge is disqualified to try a case only where he has an actual interest in the subject matter of litigation, or where he has been of counsel, or where either of the parties is connected with him by affinity or consanguinity within the third decree. Rev. Stats., art. 1090; McFadden v. Preston, 54 Texas, 407.

3. A judge disqualified to sit in a case would be also disqualified to grant a change of venue. Gaines v. Burr, 60 Texas, 676; Garrett v. Gaines, 6 Texas, 435.

4. A judgment will not be reversed on account of improper admission of testimony when the other facts in evidence are sufficient to sustain the verdict; and this is especially true when the improper testimony is withdrawn from the jury. Lindsay v. Jaffray, 55 Texas, 639; Dailey v. Starr, 26 Texas, 562.

5. The verdict and judgment were warranted by the evidence. It is shown by the testimony that the vapors and gases which arose from defendants' plant extended to and pervaded the air of the plaintiff's residence, and that such vapors and gases were offensive in their nature to the sense of smell to such an extent as to pollute the air of plaintiff's premises, putting it in such condition that it was not reasonably pure and wholesome. It is also further shown that the defendants kept in their tanks and wareroom an amount of oil sufficient to expose plaintiff's residence to imminent danger from destruction by fire. That one of the defendants' storage tanks had a storage capacity of 10,250 gallons, and the other of 12,500 gallons, from which as many as twenty barrels were filled with oil per day. That the market value of plaintiff's residence was depreciated in value 25 per cent by reason of the propinquity of defendants' plant. That because of the nearness of said plant the mind of said plaintiff was filled with constant alarm and apprehension, and that his alarm was reasonable. That the vapors and gases that pervaded plaintiff's residence and premises arose from the combined use of both kerosene and gasoline oil kept by the defendant. Comminge v. Stephenson, 76 Texas, 642; Jung v. Neraz, 71 Texas, 396; Shapard v. Barnett, 52 Texas, 638; Wood on Nuis., sec. 674; Cool. on Torts, 596, 597, 601, 602, 607.

PLEASANTS, Associate Justice.—This is an appeal from a judgment of the District Court of Houston County, perpetuating an injunction previously granted in chambers, at the suit of appellee, restraining and enjoining the appellants from storing kerosene, gasoline, and other highly inflammable oils upon certain premises situate in the town of Palestine, which are definitely described in plaintiff's petition and in the judgment. The plaintiff in his petition averred, that he was the head of a family, consisting of a wife and children, and that they resided in the city of Palestine, upon a lot owned by plaintiff, and that the defendant the Waters-Pierce Oil Company, a private corporation, was engaged in selling in said city, by and through its agent and salesman, the defendant R. Naismith, kerosene, gasoline, and other highly inflammable and explosive oils, and that said oils were stored in a wooden building and large iron tanks on wooden supports, which were situate south of plaintiff's residence, and distant about 100 feet, upon the right of way of the International & Great Northern Railway Company, and immediately north of and within a few feet of the various tracks of said company located upon and extending across its yard in said city; and that over these tracks of

railway locomotives were constantly passing and repassing, and emitting sparks of fire, and which by the prevailing winds were continuously carried over and upon said building and tanks, and by reason of all of which the residence of plaintiff and the lives of his family and himself were in great and constant danger of destruction from fire and gas explosion. The petitioner further averred, that his property, by reason of the keeping of said oils in said house and in said tanks, had depreciated 40 per cent in value; and that the said oils under the existing circumstances were a constant source of alarm and apprehension to plaintiff and his family; and that from the drippings and leakings of the oils, noxious vapors and gases were engendered, which pervaded plaintiff's residence and its neighborhood, to the great inconvenience and discomfort of himself and family. Petition also charged that the defendants were preparing to enlarge their business and to increase their stocks of oils.

The defendant corporation answered by general denial; and for special defense averred, that the oil plant was established in 1887, when plaintiff was residing where he now lives and was living when he instituted his suit, and that plaintiff knew of the purposes of said plant, and made no objection to its being established, and that he was now estopped from objecting; that since the institution of plaintiff's suit the wooden supports to the tanks had been removed and brick supports put in their place; that the wooden warehouse had been removed and an iron fireproof warehouse erected in its stead, and that the same was situated 150 feet from plaintiff's residence, and upon lower ground, and that now there was no danger from said oils to plaintiff; and that defendant's plant could not be removed, except at great expense to defendant.

The suit was brought in the District Court of Anderson County in September, 1892, and venue was changed to Houston County, and judgment rendered perpetuating the injunction in the District Court of the latter county in March, 1893.

The first assignment of error is in these words:

" 1. The court erred in refusing to transfer the case to Cherokee County, as prayed for by defendants in their motion for change of venue, or some other county out of this judicial district, because the judge of this district was disqualified to try the case, he having been a member of the city council of Palestine when the same questions involved in this case and between the same parties were passed upon and decided against these defendants by said council."

The first proposition under this assignment is as follows: "Upon the grant of a change of venue, the case should be removed to some adjoining county the court house of which is nearest to the court house of the county in which suit is pending."

Appellee suggests that the proposition should not be considered, because not germane to the assignment. This defect in the proposition is evident,

and it will not be considered. This assignment assumes that the judge was disqualified to try the case from the fact that he had, when a member of the city council of Palestine, participated in a decision rendered by that tribunal in a controversy between the plaintiff, G. K. Cook, and other citizens of Palestine, and the defendant the Waters-Pierce Oil Company, and in which controversy were involved the questions whether or not the defendant's plant was a nuisance and injurious to complainants, and if so, whether or not it should be removed.

To this proposition we do not assent. This is certainly not one of the grounds of judicial disqualification named in the law. Because a judge at a previous term of the court may have tried a cause, he is not thereby disqualified from hearing and deciding the same cause upon a second trial. Why, then, should a judge be disqualified from trying a cause involving issues which the judge had previously decided upon trial of another cause in another tribunal? We can see no more reason for the disqualification of a judge in the one case than in the other.

The interest of the judge in the subject matter of the suit, or his relation by blood or affinity to one or more of the parties having interest in the litigation, are the only grounds for his disqualification under the law of this State. If from personal knowledge of the facts of the case the judge be strongly persuaded as to what his decision will be, he is not thereby made unfit, in either a legal or a moral sense, to try the cause. The qualifications of a judge are not to be tested by the rules by which we determine the qualifications of a juror. Every one who is clothed with judicial authority, it is presumed, can and will in a trial of a cause divest himself of any and all previous conceptions he may have formed as to the law or the facts; and that he will base his judgment not upon what he had supposed the case to be, but upon the case as it is developed by the trial.

The court erred in admitting in evidence, over the objection of defendant company, the alleged declarations of the defendant Naismith to the effect that there was danger of explosion and of fire from the company's plant. These declarations were not admissions made by the company, and were not admissible in evidence against defendant company; but inasmuch as the jury was several times admonished by the court, before the cause was finally submitted to them for their verdict, that these declarations had been withdrawn by the plaintiff, and that they were not to be considered by the jury, and that the same were not in evidence before them, we are not prepared to say that such error should reverse the judgment.

The appellants' sixth assignment is as follows:

"The court erred in refusing to give the following special charges asked by defendant:

"1. Defendant asked the court to submit the following issues or questions to the jury, and require them to consider the same in the order here given:

"First. Is the emission of sparks from a passing locomotive, falling on or around defendant company's building and tanks, as now constructed, liable to set said buildings and the oil therein and in said tanks on fire, and thereby cause an explosion, which would cast burning oil over plaintiff's house and thereby destroy the same?

"Second. Do drippings and leakage of Eupion and Brilliant brands of oil kept by defendant on its said premises cause noxious vapors to pervade plaintiff's residence, to the essential inconvenience of himself and family?

"Third. Do the drippings and leakage of the gasoline oil kept by defendant on its said premises in drums cause noxious vapors and gases to pervade plaintiff's residence, to the essential inconvenience and discomfort of himself and family?

"Fourth. Do the drippings and leakage of the gasoline oil kept by defendant on its said premises in sealed five-gallon cans cause noxious vapors and gases to pervade plaintiff's residence, to the essential inconvenience and discomfort of himself and family?

"Fifth. The jury are instructed, that the essential inconvenience and discomfort mentioned above must be such as to produce such a condition of things as in the judgment of reasonable men is naturally productive of actual physical discomfort to persons of ordinary tastes and habits, and as in view of the case is unreasonable and in derogation of the rights of the plaintiff."

The first and fifth of these requested instructions were substantially given by the court in the first and second paragraphs of its charge.

There was nothing in the pleadings of the defendant to require or to authorize the court to give the third or the fourth requested instruction, and while the first might have been properly given, had it not been connected with the third and fourth instructions, the court did not err in refusing to give it along with others which were not proper instructions. Until the defendant by appropriate pleadings averred that there was no danger to plaintiff and his household from noxious gases and vapors from some of the oils kept in his warehouse and tank, and that gasoline oil kept in five-gallon cans was harmless, and that neither injury nor inconvenience would result to plaintiff and his family from the storing and selling of said oils in such quantities by defendant, and until such averments were supportrd by evidence, the court was not authorized to submit to the jury the issues presented in the third and fourth of the requested instructions.

The assumption of the appellant in his seventh assignment of error, that the court submitted issues to the jury in the third paragraph of its

charge not warranted by the pleadings and the evidence, is not sustained by the record, either as to the pleadings or the evidence of the plaintiff.

The plaintiff's complaint, as set out in the petition, is not restricted to the character of the oils stored by defendant; it includes also the quantity of oil so kept by defendant. The danger from fire depended not less upon the amount of oil in the warehouse and in the tanks than upon the inflammable and explosive nature of the oils.

The last assignment of error is, that the court erred in not giving a new trial, because the verdict was not supported by the evidence. The court submitted to the jury special issues, and two of these are submitted in the following paragraphs of the charge:

" 1. Did the vapors or gases which arose from the plant of the defendant company extend to and pervade the air of plaintiff Cook's residence?

" 2. Were such vapors or gases offensive in their nature to the sense of smell, to such an extent as to pollute the air of plaintiff's premises, putting it in such a condition that it was not reasonably pure and wholesome? By the term reasonably pure and wholesome, is meant not the absence of even vapor or gas which might cause any discomfort, however small, nor does it mean that the air must be so far polluted as to actually injure or threaten health; but by this term is meant only such extent of pollution of the air as would materially interfere with the comfortable enjoyment of life with a person of ordinary sensibilities and of ordinary tastes and habits. In passing upon this question, you will take into consideration the nature of such vapors or gases as pervade plaintiff's premises, if you find any pervaded it, as being offensive or not offensive, its volume or amount, its frequency, and all other facts or circumstances developed by the evidence and relevant to this issue."

In response to these two issues, the jury, by their verdict, responded as follows:

" To the first question we answer, the vapors or gases which arise from the plant of the defendant company did extend and pervade the air of plaintiff Cook's residence.

" 2. To the second question we answer, that the vapors or gases were offensive in their nature to the sense of smell to such an extent as to pollute the air of plaintiff's premises, putting it in such a condition that it was not reasonably pure and wholesome."

Our conclusion upon the facts is, that the findings of the jury upon the two special issues are fully sustained by the evidence. Our conclusions upon the law of the case are, that it was proper for the court to submit these issues to the jury, and that their submission was accompanied by correct and appropriate instructions from the court, and that the response of the jury being in the affirmative, the court correctly rendered judgment, for the plaintiff, restraining and enjoining the defendant as prayed for in

plaintiff's petition.    This being our view of the law of this case, we are relieved from considering the other assignments of error, as well as from the necessity of determining whether or not there was error in the submission of the other special issues, and whether the findings of the jury upon these issues were or were not sustained by the evidence.

The judgment of the lower court is affirmed.

*Affirmed.*

Delivered March 29, 1894.